IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION

| | |  |
|---|---|---|
| JUSTIN L. COLLINS, <br> ADC #166760, <br><br> Plaintiff, <br><br> v. <br><br> TRACY HAZZLEWOOD, CPL, <br> Cleburne County Detention Center; *et al.*, <br><br> Defendants. | * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * | No. 1:17cv00003-JJV |

**MEMORANDUM AND ORDER**

**I.    INTRODUCTION**

Justin L. Collins ("Plaintiff") brings this action *pro se* and under 42 U.S.C. § 1983. (Doc. No. 2.)  He alleges Defendants, officials at the Cleburne County Detention Center, failed to deliver proper dosages of his psychiatric medication during his incarceration there.[1]  (*Id*. at 4-6.)  Plaintiff seeks monetary damages.  (*Id*. at 4.)  Defendants Tracy Hazzlewood,[2] Kim Rackley, Teresa Vaughn, and Angelo Aldrighetti have filed a Motion for Summary Judgment, contending they are entitled to judgment as a matter of law on Plaintiff's claims.  (Doc. No. 51.)  Plaintiff has not responded, and the time for doing so has passed.  For the following reasons, I find summary judgment is appropriate and Plaintiff's Complaint is DISMISSED WITH PREJUDICE.

**II.    FACTS**

Plaintiff was detained at the Cleburne County Detention Center from August 11, 2016, until January 28, 2017, when he was transferred to the custody of the White County Detention

---

[1] Plaintiff's Complaint included other claims, which were previously dismissed.  (Doc. Nos. 5, 17.)
[2] This Defendant's name is Tracy Hazlewood.  (Doc. No. 51 at 1.)  The Clerk is directed to amend the docket to reflect the correct spelling of her name.

Center. (Doc. No. 53-1 at 2.) According to his Complaint, Defendant Hazlewood failed to deliver the proper dosage of his psychiatric medication on two occasions – October 2, 2016, and November 14, 2016. (Doc. No. 2 at 4.) Plaintiff also contends Defendants Rackley and Vaughn failed to timely respond to "a medication emergency" on December 8, 2016. (*Id*. at 5.) Plaintiff alleges Defendant Aldrighetti, Administrator of the Cleburne County Detention Center, allowed this "abuse" to occur, even after being informed of it, due to his "biased hostility" toward Plaintiff stemming from Defendant Aldrighetti's involvement in Plaintiff's arrest. (*Id*. at 5-6.)

The grievances Plaintiff submitted regarding these issues provide more detail. On October 3, 2016, Plaintiff complained that Defendant Hazlewood had failed to deliver the proper dosage of his Seroquel on October 2, 2016. (Doc. No. 53-2 at 44.) He stated, "Instead of calling Nurse Bonnie or Teresa to get the medication out of the inventory, she simply denied my required dosage of 200 mg & only gave me 100 mg. I got no sleep." (*Id*.) Defendant Aldrighetti responded to this grievance, stating he had taken up the issue with the nurse and would discuss it with Defendant Hazlewood to make sure Plaintiff's medications were properly dispensed. (*Id*.) On November 14, 2016, after Plaintiff's Seroquel prescription had been increased to 250 milligrams, he complained that Defendant Hazlewood failed to administer the additional 50 milligrams. (*Id*. at 46.) He stated Defendant Hazlewood had claimed to be out of the medication but could have "cut one of the 200 mg tabs twice in order to supplement my prescribed dosage." (*Id*.) Defendant Aldrighetti responded to this grievance as well, stating he would look into the issue with all involved, including the nurse. (*Id*.) In response to a subsequent, unrelated grievance, Defendant Aldrighetti noted he had discussed "the first prescription issue" with Defendant Hazlewood: "I was informed your prescription was out [and] the nurse was not called for a substitute pill. Cpl. Hazlewood was advised to contact nurse if this happens again." (*Id*. at 47.)

On December 10, 2016, Plaintiff filed a grievance stating it had been four days since Defendants Vaughn and Rackley denied him medical attention. (*Id*. at 48.) It is not clear whether this grievance relates to his allegation that these Defendants failed to timely respond to "a medication emergency" on December 8. Plaintiff referred to a "medication request" in the grievance, stating he had been asking Defendant Rackley to text the nurse, Defendant Vaughn, which Defendant Rackley had failed to do. (*Id*. at 49.) However, he also referred to a missed appointment with his therapist, stating he had expressed a need for urgent mental health treatment four days prior. (*Id*. at 48.) In any event, Defendant Aldrighetti's response to this grievance was that arrangements were being made for Plaintiff to see his therapist. (*Id*.)

### III.   SUMMARY JUDGMENT STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record, "including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials[.]" Fed. R. Civ. P. 56(c)(1)(A).

When ruling on a motion for summary judgment, the court must view the evidence in a light most favorable to the nonmoving party. *Naucke v. City of Park Hills*, 284 F.3d 923, 927 (8th Cir. 2002). The nonmoving party may not rely on allegations or denials, but must demonstrate the existence of specific facts that create a genuine issue for trial. *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007). The nonmoving party's allegations must be supported by sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or

fantasy. *Id.* (citations omitted). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case. *Othman v. City of Country Club Hills*, 671 F.3d 672, 675 (8th Cir. 2012). Disputes that are not genuine or that are about facts that are not material will not preclude summary judgment. *Sitzes v. City of W. Memphis, Ark.*, 606 F.3d 461, 465 (8th Cir. 2010).

## IV.   ANALYSIS

### A.   Official Capacity Claims

Plaintiff has sued Defendants in both their personal and official capacities. (Doc. No. 2 at 2.) Official capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (quoting *Monell v. Dep't of Social Servs. of City of New York*, 436 U.S. 658, 690, n. 55 (1978)). As long as the government entity receives notice and an opportunity to respond, an official capacity suit is, in all respects other than name, to be treated as a suit against the entity. *Id.* at 166. Thus, Plaintiff's official capacity claims against Defendants are to be treated as claims against Cleburne County. Section 1983 liability against municipalities and other local government units is limited:

> Local governing bodies, therefore, can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers. Moreover, although the touchstone of the § 1983 action against a government body is an allegation that official policy is responsible for a deprivation of rights protected by the Constitution, local governments, like every other § 1983 "person," by the very terms of the statute, may be sued for constitutional deprivations visited pursuant to governmental "custom" even though such a custom has not received formal approval through the body's official decisionmaking channels.

*Monell*, 436 U.S. at 690-91. A municipality cannot be held liable under § 1983 on a *respondeat superior* theory. *Id.* at 691. *See also Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535-36 (8th Cir. 1999).

Plaintiff has not identified any official policy or unofficial custom of Cleburne County that caused or contributed to his alleged injury. Because Plaintiff makes no allegation that Defendants were implementing an unconstitutional policy or custom, his official capacity claims against them must be dismissed.

**B.     Personal Capacity Claims**

Defendants contend they are entitled to qualified immunity on Plaintiff's claims against them in their personal capacities. (Doc. No. 52 at 7.) Qualified immunity protects government officials who acted in an objectively reasonable manner and shields an official from liability when his or her conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity is a question of law, not a question of fact. *McClendon v. Story Cty. Sheriff's Office*, 403 F.3d 510, 515 (8th Cir. 2005). Thus, issues concerning qualified immunity are appropriately resolved on summary judgment. *See Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (the privilege is "an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial").

To determine whether defendants are entitled to qualified immunity, courts generally consider two questions: (1) whether the facts alleged or shown, construed in the light most favorable to the plaintiff, establish a violation of a constitutional or statutory right; and (2) whether that right was so clearly established that a reasonable official would have known that his or her actions were unlawful. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009); *see also Saucier v. Katz*, 533 U.S. 194, 201 (2001).[3] Defendants are entitled to qualified immunity only if no reasonable

---

[3] Courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the

5

fact finder could answer both questions in the affirmative. *Nelson v. Corr. Med. Servs.*, 583 F.3d 522, 528 (8th Cir. 2009). Upon review of the record in this case, I find the facts shown, construed in the light most favorable to Plaintiff, do not establish a violation of his constitutional rights.

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments" on those convicted of crimes.[4] *Wilson v. Seiter*, 501 U.S. 294, 296-97 (1991). A prisoner advancing an Eighth Amendment claim based on medical care must, at a minimum, allege "deliberate indifference" to his "serious" medical needs. *Id.* at 297. Deliberate indifference to the serious medical needs of a prisoner constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). Deliberate indifference may be manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with treatment once prescribed. *Id*. at 104-05. However, an inadvertent or negligent failure to provide adequate medical care cannot be said to constitute "an unnecessary and wanton infliction of pain." *Id*. at 105.

Defendants contend they were not deliberately indifferent to Plaintiff's serious medical need. (Doc. No. 52 at 8.) The evidence submitted in support of their Motion demonstrates they were not. First, Plaintiff initialed his Medication Administration Record on both October 2, 2016, and November 14, 2016, indicating he received the appropriate dosage of Seroquel on both occasions. (Doc. No. 53-2 at 22-23.) A notation appears beside the October 2 entry: "Only 1 @

---

particular case at hand." *Nelson v. Corr. Med. Servs.*, 583 F.3d 522, 528 (8th Cir. 2009) (quoting *Pearson*, 555 U.S. at 236).

[4] Because Plaintiff was a pretrial detainee at the time of the alleged constitutional violations (Doc. No. 2 at 3), his claims are properly analyzed under the Due Process Clause of the Fourteenth Amendment rather than the Eighth Amendment. *Davis v. Hall*, 992 F.2d 151, 152 (8th Cir. 1993) (per curiam). Nonetheless, the same "deliberate indifference" standard has been held to apply. *Id*. at 152-53 (citing *Johnson-El v. Schoemehl*, 878 F.2d 1043 (8th Cir. 1989)).

H/S." (*Id*. at 22.) It is not clear who made this notation, but it seems to indicate Plaintiff was only given one of two 100 milligram tablets of Seroquel he was supposed to receive on that date. This would be consistent with Defendant Aldrighetti's observation that the correct dosage of Plaintiff's medication was not available and Defendant Hazlewood did not call the nurse to obtain a substitute pill. (*Id*. at 47.) But even assuming Plaintiff was given only half of his prescribed dosage of Seroquel on this one occasion, the only injury he complained of was that he "got no sleep." (*Id*. at 44.) Moreover, the evidence shows Defendants were continuously responsive to Plaintiff's mental health needs, increasing the dosage of his Seroquel – at his request – on at least three occasions during his incarceration. (*Id*. at 4, 6, 10, 38.) As Plaintiff's Medication Administration Record shows, he was prescribed many medications during his incarceration and repeatedly received them without incident. (*Id*. at 20-30.) The possibility that Defendant Hazlewood, who is not a medical professional (Doc. No. 53-3 at 3), failed to provide the correct dosage to Plaintiff on one occasion when the correct dosage was unavailable to her amounts to "an inadvertent failure to provide adequate medical care." *Estelle*, 429 U.S. at 105. Defendant Aldrighetti later remedied this issue by instructing Defendant Hazlewood to contact the nurse if Plaintiff's medications were unavailable in the future. (Doc. No. 53-2 at 47.) There appear to have been no further incidents.

Plaintiff's claim against Defendants Vaughn and Rackley regarding the December 8, 2016, "medication emergency" is undeveloped. His Complaint alleges only that they failed to timely respond; he does not explain what the emergency was or how it related to his medication. (Doc. No. 2 at 5.) In a written medical request dated December 6, 2016, Plaintiff asked Defendant Vaughn if his Seroquel prescription could be increased from 250 milligrams to 350 milligrams, as he was "beginning to build a tolerance." (Doc. No. 53-2 at 17.) She responded that the outside provider caring for Plaintiff's mental health needs, Health Resources of Arkansas, was "adjusting

7

[and] prescribing" his medications. (*Id.*) In the December 10 grievance, Plaintiff's only reference to medication was that he had been asking Defendant Rackley "to text the nurse and follow up w/ my medical request (medication request) which Cpl. Rackley has failed to do." (*Id.* at 49.) Assuming the "medication request" and "medication emergency" Plaintiff refers to is the December 6 request for an increase in his Seroquel, the evidence clearly demonstrates neither Defendant Vaughn nor Defendant Rackley were deliberately indifferent to his request. Defendant Vaughn responded to the request on the day Plaintiff made it, stating the outside provider would make any adjustments to his medications. (*Id.* at 17.) The Medication Administration Record shows Plaintiff subsequently began taking 400 milligrams of Seroquel. (*Id.* at 26.)

Finally, Plaintiff's claim against Defendant Aldrighetti is based on his position as a supervisor. In the § 1983 context, supervisors cannot be held liable for the misconduct of subordinates based only on the employment relationship. *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). A prison supervisor can be held liable if he fails to properly supervise his subordinates by tacitly authorizing a constitutional violation or by failing to take corrective action in response to a violation. *Boyd v. Knox*, 47 F.3d 966, 968 (8th Cir. 1995). However, to state a failure to supervise claim, a plaintiff must show the supervisor received notice of a pattern of unconstitutional acts committed by subordinates, demonstrated deliberate indifference to or tacit authorization of the offensive acts, failed to take sufficient remedial action, and that such failure proximately caused injury to the plaintiff. *Parrish v. Ball*, 594 F.3d 993, 1002 (8th Cir. 2010). Here, Plaintiff has failed to demonstrate a pattern of unconstitutional acts occurred, much less that Defendant Aldrighetti received notice of it and was deliberately indifferent to it. When he was informed Plaintiff had not been given the correct dosage of his Seroquel, Defendant Aldrighetti took remedial action by speaking with his subordinates who were involved, and specifically instructing

Defendant Hazlewood to contact the nurse if Plaintiff's medication ran out again. (Doc. No. 53-2 at 47.)

For these reasons, Plaintiff has failed to show Defendants were deliberately indifferent to a serious medical need by denying him the proper dosages of his medication. Because the facts alleged or shown, construed in the light most favorable to Plaintiff, do not establish a violation of a constitutional or statutory right, Defendants are entitled to qualified immunity on Plaintiff's claims against them in their personal capacities.

## V.  CONCLUSION

IT IS, THEREFORE, ORDERED that:

1. The Clerk amend the docket to reflect the correct spelling of Defendant Tracy Hazlewood's name. (Doc. No. 51 at 1.)

2. Defendants' Motion for Summary Judgment (Doc. No. 51) is GRANTED.

3. Plaintiff's cause of action is DISMISSED with prejudice.

4. Pursuant to 28 U.S.C. § 1915(a)(3), an *in forma pauperis* appeal from this Order or accompanying Judgment would not be taken in good faith.

DATED this 2nd day of November, 2017.

_____
JOE J. VOLPE
UNITED STATES MAGISTRATE JUDGE